(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| GREGORY HENRY, | : | |
| Plaintiff, | : | Civil No. 04-5151 (RBK) |
| v. | : | **OPINION** |
| CITY OF WOODBURY, et al., | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

Presently before the Court is a motion by defendants City of Woodbury, Patrolman Nicholas Danze, Detective Sergeant Robert Atkisson, and Detective Stephen Cope ("Defendants") seeking summary judgment against plaintiff Gregory Henry ("Plaintiff") on Plaintiff's suit brought pursuant to 42 U.S.C. § 1983, the New Jersey Constitution, and New Jersey common law. For the reasons set forth below, this Court will grant Defendants' motion.

I.    BACKGROUND

Plaintiff filed a Complaint in the Superior Court of New Jersey on August 20, 2004, and Defendants removed the action to this Court on October 20, 2004. In his Complaint, Plaintiff accused Defendants of violating his civil rights as guaranteed under the United States

Constitution and New Jersey Constitution, claiming false imprisonment and malicious prosecution.[1] Plaintiff further claimed that Defendants were liable under New Jersey common law for "wrongful imprisonment" and "protection from unfair government action."

Plaintiff's allegations stem from the events that took place between August 24, 2002 and August 29, 2002.[2] On August 24, 2002, Patrolman Danze encountered a woman named Sara Muldoon ("Muldoon"), who was intoxicated and bleeding from the head. After calling for an ambulance, Patrolman Danze was approached by Plaintiff. As Plaintiff approached, an anonymous caller notified a police dispatcher that the man who was approaching Patrolman Danze was the person who had beaten Muldoon. Patrolman Danze further noted that Plaintiff had blood on his hands and wrists and that Plaintiff smelled of alcohol. Patrolman Danze placed Plaintiff into his patrol car, and then spoke with John Barlow, who told Patrolman Danze that he had seen a man meeting Plaintiff's description standing next to Muldoon and holding an umbrella after Muldoon had been assaulted. Patrolman Danze recovered this umbrella, which had blood and what appeared to be black hairs on it. At this time, Patrolman Danze arrested Plaintiff for aggravated assault. In lieu of $5,000 bail, Plaintiff remained in the Gloucester County jail. Patrolman Danze then went to Underwood Memorial Hospital, where Muldoon, though still intoxicated, told him that she had been punched by a black woman, and that a girl had cut her with a knife. On August 26, 2002, Detective Cope spoke to a man named Andrew

---

[1] Though represented by counsel, Plaintiff's Complaint is not entirely clear as to the exact nature of the constitutional violations that he alleges. However, given the context of the Complaint's "preliminary allegations" and the briefing by both parties, this Court is confident that it understands Plaintiff's Complaint to allege the same constitutional violations as those understood by the parties.

[2] The facts as set forth below are agreed upon by all parties.

Bozarth ("Bozarth"), who told Detective Cope that on August 25, 2002 a man had told Bozarth that he had seen a fight between two women on August 24, 2002, but that Bozarth did not know the identity of this man. On August 27, 2002, Plaintiff's relatives arrived at the police station with a man named Leroy English ("English"). English told Detective Cope that he had seen the altercation and that he saw a black woman strike another woman with an umbrella. Plaintiff's relatives identified the assailant as Sholanda Diggs ("Diggs"). That same day, Muldoon gave a statement to Detective Cope in which she stated that she did not remember being assaulted, but did remember arguing with a black woman. On August 28, 2002, Detective Cope went to the address that Plaintiff's relatives had provided for Diggs, but Diggs was not at home. On August 29, 2002, Diggs came to the police station and stated that she had accidentally hit Muldoon with the umbrella, which had caused Muldoon's head injury, and that a black man had intervened to try to stop the altercation. That same day, Detective Cope contacted Judge Powell, who authorized Plaintiff's release. Detective Cope then contacted an assistant prosecutor, who agreed to drop the charges against Plaintiff. Detective Cope also told Lieutenant McKnight of the developments, and McKnight contacted the Gloucester County Jail and informed officials there that Plaintiff was to be released.

## II.  STANDARD FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986). A genuine issue of material fact

exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

#### A. Plaintiff's Claims under § 1983

Plaintiff's claims under § 1983 allege that Defendants are liable for false imprisonment and malicious prosecution. Specifically, Plaintiff alleges that even though Defendants may have had probable cause to arrest him on August 24, 2002, they did not maintain such probable cause

by August 27, 2002, given their interview with English. Since Plaintiff was not released until August 29, 2002, Plaintiff claims that this two-day period amounted to false imprisonment and malicious prosecution.

### 1. Qualified Immunity

Government officials who are accused of violating a person's constitutional rights while performing discretionary functions are entitled to qualified immunity. Qualified immunity shields officials "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This analysis is two-fold. First, the Court is to assess whether the facts as alleged by the plaintiff amount to a constitutional violation. If this test is met, the Court then determines whether the right is "clearly established." Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004). In other words, before engaging in a determination of whether a right is clearly established, the Court must first determine whether a constitutional violation has occurred, because "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Id. at 776 (quoting Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002)). Therefore, this Court must first assess the claims made by Plaintiff to determine whether they amount to a violation of his constitutional rights. Only if such a finding is made does this Court then proceed to analyze whether the right violated was clearly established.

### 2. Applicable Standards

It is well established that "where the police lack probable cause to make an arrest, the

arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. A false imprisonment claim under § 1983 based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citations omitted). Therefore, a defense to a claim of false imprisonment is that the police officer defendants acted with probable cause. See id. ("[A]n arrest based on probable cause [can]not become the source of a claim for false imprisonment.") (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)). Similarly, for Plaintiff to state a case for malicious prosecution, he "must establish, among other things, an absence of probable cause for the initiation of the proceedings against [him]." Montgomery v. DeSimone, 159 F.3d 120, 124 (3d Cir. 1998).

Therefore, in the case presently before this Court, Defendants are entitled to summary judgment if the facts, taken in a light most favorable to Plaintiff, show that Defendants' actions were supported by probable cause. To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997). Moreover, "a District Court may

conclude that probable cause exists as a matter of law, and grant summary judgment if the evidence, when viewed in the light most favorable to Plaintiff[], reasonably would not support a contrary factual finding." Jobes v. Moorestown Twp., No. 03-4016, 2006 U.S. Dist. LEXIS 78918, at *19 (D.N.J. Oct. 19, 2006) (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

        3.    Analysis

In this case, Plaintiff does not appear to dispute that Defendants had probable cause to arrest him on August 24, 2002. Rather, Plaintiff contends that on August 27, 2002, after having spoken to both Muldoon and English, Defendants no longer had probable cause to maintain the charges against Plaintiff.

While the Third Circuit has not so explicitly ruled, the First Circuit has held that "following a legal warrantless arrest based on probable cause, an affirmative duty to release arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded." Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986). The Fifth Circuit has also adopted this approach. See Duckett v. City of Cedar Park, 950 F.2d 272, 279 (5th Cir. 1992); McConney v. Houston, 863 F.2d 1180, 1184-85 (5th Cir. 1989).

In this case, Plaintiff points to deposition testimony in which Detective Cope acknowledges that after speaking to English, he believed that Plaintiff was not guilty of the crime with which he was charged. (Pl.'s Br. at 5 ¶¶ 5-6; Pl.'s Br. Ex. B.) In his deposition, Detective Cope notes that he did not immediately inform anyone else of this belief. (Pl.'s Br. Ex. B.) However, Detective Cope further noted that the reason behind this was that his "investigation

was not complete at that time" and because he "wanted to corroborate Mr. English's story." (Id.)

Plaintiff would appear to have this Court conclude that Detective Cope's desire to seek additional corroboration of Plaintiff's innocence was unnecessary for him to "ascertain beyond a reasonable doubt" that Plaintiff was innocent. This Court instead finds that based on the facts presented by Plaintiff, no reasonable jury could so conclude. It appears to this Court that the actions of Detective Cope and the other individual Defendants were in fact intended to assure them that Plaintiff was innocent, and that the additional two days that lapsed between English's statement and Plaintiff's release allowed Defendants to interview Diggs, whose assertions appear to have satisfied Defendants as to Plaintiff's innocence. In short, while Plaintiff offers evidence that Detective Cope had come to doubt Plaintiff's guilt, Plaintiff offers no evidence that Detective Cope, nor any other Defendant, was convinced beyond a reasonable doubt of Plaintiff's innocence. Instead, the evidence on record shows that Defendants used the two day window at issue in this case to in fact reach this level of certainty regarding Plaintiff's innocence.

This identical rationale is applicable in assessing Plaintiff's claim for malicious prosecution. When the charges were initially filed against Plaintiff, Defendants had probable cause to suspect him of having committed the crime with which he was charged. After the events of August 27, 2002, Defendants doubted the validity of these charges, and by all accounts worked to corroborate the circumstances surrounding these doubts, leading them to conclude only two days later that Plaintiff was in fact innocent and that the charges should be dismissed.

Therefore, under the qualified immunity rubric, Plaintiff has failed to satisfy the first prong of showing that a violation of his constitutional rights occurred. Accordingly, this Court will grant Defendants' motion for summary judgment as to Plaintiff's claims under § 1983.

B.     Plaintiff's State Law Claims

1.     Claims under the New Jersey Constitution

While claims for violations of rights guaranteed under the United States Constitution are brought pursuant to a statute, namely § 1983, the New Jersey Constitution itself provides a cause of action for a violation of the rights it guarantees. See Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 459 (D.N.J. 1999) ("The New Jersey Supreme Court has held that the Constitution of the State of New Jersey may provide a private cause of action premised upon alleged violations of the State constitution.") (citing Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 76-80, 389 A.2d 465 (1978)).  However, as Plaintiff has cited no authority nor otherwise suggested that a court's analysis of claims brought pursuant to the New Jersey Constitution for false imprisonment and malicious prosecution is any different than the analysis of these same claims brought pursuant to the United States Constitution, this Court will rely on the same reasoning as in sections III(A)(2)-(3) above in granting Defendants' motion for summary judgment as to Plaintiff's claims brought pursuant to the New Jersey Constitution.

2.     Common Law Claim for Wrongful Imprisonment

Plaintiff brings a claim for "wrongful imprisonment," the substance of which appears analogous to a false imprisonment claim.  New Jersey courts have held that "[l]egal justification or probable cause for detention are the defenses to an action for false arrest or imprisonment." Hayes v. Mercer Cty., 217 N.J. Super. 614, 623, 526 A.2d 737 (App. Div. 1987), certif. denied, 108 N.J. 643, 532 A.2d 226 (1987).  See also Jobes, 2006 U.S. Dist. LEXIS 78918, at *27 (stating that a claim under New Jersey common law for false imprisonment hinges on "whether the arrest and detention . . . were based on adequate probable cause").  Accordingly, this Court

will rely on its reasoning in sections III(A)(2)-(3) above in granting Defendant's motion for summary judgment as to Plaintiff's common law claim for wrongful imprisonment.

        3.    <u>Common Law Claim for Protection from Unfair Government Action</u>

Neither Plaintiff nor Defendants mention this claim in their briefs, nor can this Court ascertain exactly to what such a claim refers.  However, as this Court's jurisdiction over this claim is supplemental, pursuant to 28 U.S.C. § 1367, and this Court has dismissed all claims over which it had original jurisdiction, namely Plaintiff's claim pursuant to 42 U.S.C. § 1983, this Court will decline to exercise its supplemental jurisdiction over this remaining state common law claim, and will therefore dismiss it without prejudice.  <u>See</u> 28 U.S.C. § 1367(c)(3).

**IV.    CONCLUSION**

Based on the foregoing reasoning, this Court will grant Defendants' motion for summary judgment, and will therefore dismiss with prejudice Plaintiff's claims brought for violations of his civil rights as guaranteed by the United States Constitution and the New Jersey Constitution, as well as Plaintiff's common law claim for false imprisonment.  This Court will decline to exercise its supplemental jurisdiction over Plaintiff's claim for protection from unfair government action and will therefore dismiss this claim without prejudice.  The accompanying Order shall issue today.

Dated: <u>January 19, 2007</u>                <u>s/ Robert B. Kugler</u>
                                              ROBERT B. KUGLER
                                              United States District Judge